The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 7 |
| | ) | |
| KEVIN LESLIE SIBILA, | ) | CASE NO. 09-64754 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

On March 15, 2010, the United States trustee ("UST") filed a motion to dismiss this case under 11 U.S.C. § 707(b)(1) and (3). An evidentiary hearing was held on August 2, 2010 and a further evidentiary hearing was held on September 20, 2010. Debtor Kevin Leslie Siblia ("debtor") was represented by Donald M. Miller and the UST was represented by Scott R. Belhorn. The UST's motion to dismiss is now before the Court.

### LEGAL BACKGROUND

Section 707(b)(1) and (3) provide in pertinent part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if

it finds that the granting of relief would be an abuse of the provisions of
this chapter . . . .

> (3) In considering under paragraph (1) whether the granting of relief would
> be an abuse of the provisions of this chapter . . . the court shall consider . . .
> [whether] the totality of the circumstances of the debtor's financial
> situation demonstrates abuse.

Section 707(b) was amended by the passage of the Bankruptcy Abuse and Consumer
Protection Act of 2005 ("BAPCPA"). Prior to 2005, section 707(b) required a showing of
"substantial" abuse before a case could be dismissed or converted and established a presumption
"in favor of granting the relief requested by the debtor." Both the requirement that abuse be
"substantial" and the presumption that relief be granted were eliminated by BAPCPA. In re
Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). BAPCPA also created the "means
test" of section 707(b)(2), which creates a presumption of abuse for above median income
debtors. Id. at 865.

In determining whether a debtor's case should be dismissed under section 707(b)(1) and
(3), bankruptcy courts in this district have applied the factors used by the Sixth Circuit Court of
Appeals in pre-BAPCPA cases. E.g., In re Srikantia, 417 B.R. 505, 508–509 (Bankr. N.D. Ohio
2009) ("[P]re-BAPCPA decisions provide sound guidance and are instructive in evaluating
motions to dismiss."); Mestemaker, 359 B.R. at 856; In re Simmons, 357 B.R. 480, 489 (Bankr.
N.D. Ohio 2006). However, while the basic character of the analysis is unchanged, courts have
recognized that the 2005 amendments have lowered the United States Trustee's burden.
Mestemaker, 359 B.R. at 856 ("The court emphasizes, however, that Congress has clearly
lowered the standard for dismissal in changing the test from 'substantial abuse' to 'abuse.'").

A determination that abuse has occured can be predicated on either a lack of honesty or a
lack of need. In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989)). In determining whether a debtor is
honest, courts should determine if the debtor is "merely seeking an advantage over his creditors,
or instead is 'honest' in the sense that his dealings with creditors have been marked by essentially
honorable and undeceptive dealings." In re Behlke, 358 F.3d 429, 434 (6th Cir. 2004). Factors to
be considered in determining whether a debtor is honest include the debtor's good faith and
candor in filling out schedules and other documents, whether the debtor has engaged in "eve of
bankruptcy" purchases, and whether the debtor was forced into chapter 7 by unforeseen or
catastrophic events. Krohn, 886 F.3d at 126.

The primary factor in deciding whether a debtor is needy is whether the debtor can repay
his debts out of his future earnings. Krohn, 886 F.2d at 126–127 ("That factor alone may be
sufficient to warrant dismissal.") Courts have dismissed the cases of debtors who can make
substantial payment to their general unsecured creditors in a chapter 13 plan. Behlke, 358 F.3d at
437 (pre-BAPCPA opinion dismissing case where debtor could pay 14% dividend to general
unsecured creditors over 36 month plan); Mestemaker, 359 B.R. at 857 (dismissing case where

2

debtors could pay 10% to 15% dividend to general unsecured creditors). Other factors the court may consider include whether the debtor enjoys a stable source of income, whether the debtor's expenses can be reduced, and whether the debtor's financial situation is the result of an unforeseen catastrophic event. Krohn, 886 F.2d at 126–128.

## FACTUAL BACKGROUND

Debtor is a 51-year-old airline pilot for JetBlue, where he has worked for the last 6 years. Prior to working at JetBlue, debtor was a commercial pilot at a much lower rate of pay. Prior to that, debtor worked the night shift at Republic Steel for 10 years while attending college. The mandatory retirement age for airline pilots is 65.

Debtor's present income is a matter of controversy. Debtor contends that he grosses $10,872 per month based on 72 hours per month at $150 per hour. A 70-hour month is considered full time. Debtor testified that he is only paid for the time beginning 15 minutes before he releases the emergency brake on the aircraft and ending 15 minutes after he lands. He testified that will be impractical for him to work more than 72 hours per month because of his obligations under a shared parenting agreement with his ex-wife. The UST contends that, based on debtor's year-to-date wages, debtor earns $13,425 in gross income per month or $161,100 per year.

Debtor testified that he spends a considerable amount of time and money commuting to New York, which is his base of operations as a pilot. Debtor maintains an apartment in New York City. Debtor obtains his jobs through seniority-based bidding conducted on the internet. The debtor testified that, to minimize his time spent in New York City, he attempts to cluster his flights into 3 to 4 day periods several times per month. He enjoys free flights to and from New York City but is not guaranteed a seat on optimal flights. Only 50% of his other travel expenses are reimbursed. He further testified that it is impractical for him to move closer to New York because of his obligations under the shared parenting agreement.

Debtor's divorce was finalized in January of 2009. Pursuant to a separation agreement, he pays $1,500 per month in spousal support. Pursuant to a shared parenting agreement, he pays $942 per month in child support for his three children aged 8, 12 and 14. He is also required to provide medical insurance for his children. The shared parenting agreement requires the debtor to have his children between 3 and 4 days per week for a total of approximately 14 days per month. The debtor testified that he is currently at risk of a contempt order from the domestic relations court because he has failed to have custody of his children for the time required under the shared parenting agreement. The debtor explained that he could not meet his obligations because he was working too many hours.

The debtor presently owns two houses. The debtor relied on the contractually due monthly payments on both houses to pass the means test. First, he has a one-half interest in his former marital residence at 8500 Candlewood Ave. NW, North Canton, OH 44718

3

("Candlewood property"). Schedule A lists the Candlewood property as worth $250,000 and subject to a $291,144 lien. The debtor testified that, despite his efforts to work with the mortgage servicer, the Candlewood property is in foreclosure. Debtor's ex-wife had possession of the Candlewood property and left it in a condition in which a plumbing-based flood caused substantial damage.

Second, the debtor owns a residence at 6599 Harbor Dr. NW, Canton, OH 44718 ("Harbor Drive property"), where he lives while not at his job. Schedule A lists the Harbor Drive property as worth $115,000 and subject to a $115,000 lien. The debtor testified that at the time he purchased the Harbor Drive property, he knew that the Candlewood property was going into foreclosure. He purchased the Harbor Drive property from Sharon Suarez, who he was dating at the time. He attempted to get conventional financing but was turned down because of poor credit. Ms. Suarez agreed to finance the debtor's purchase of the Harbor Drive property but was unwilling to tie her money up long term. For this reason, she and the debtor agreed to an eight-year mortgage. The debtor's payment on the mortgage is $1,533 per month, exclusive of taxes and insurance.

At the hearing, the debtor testified regarding the circumstances that led him to bankruptcy. He testified that during his marriage his ex-wife used credit cards excessively. He testified that whenever he made headway in paying off his credit cards, his ex-wife would charge them up again. Debtor's unsecured debt presently totals approximately $100,691, including a $44,151 balance with Bank of America, an $11,850 balance with Capital One, an $18,481 balance with Chase, and an $18,165 balance with HSBC. Debtor's ex-wife was recently discharged in a separate bankruptcy.

In 2007, the debtor experienced a six month period of unemployment due to a failed physical. The debtor testified that he is subjected to a rigorous physical examination every six months. If he is not in excellent shape, he is not allowed to fly. The debtor testified that in 2007 his marriage was faltering and that he began taking an antidepressant. When he revealed his use of antidepressants at his physical, he was grounded for six months. During the time of his unemployment, the debtor and his ex-wife depended exclusively on her income of approximately $36,000 per year.

Amended Schedule J indicates that debtor contributes $543 per month to his 401(k), which, according to Schedule C, presently has a balance of approximately $15,000. The precise amount of his contribution varies because it is pegged to his income. No evidence was presented that the debtor changed his 401(k) withholding in contemplation of bankruptcy. The debtor's pay stubs indicate tax withholding of approximately 32%. However, his amended Schedule J deducts only 21%. According to amended Schedule J, the debtor has only $15 in monthly income with which to fund a chapter 13 plan. The UST disagrees and contends that the debtor can repay a substantial portion of his unsecured debts in a chapter 13 plan.

4

## ANALYSIS

The debtor is both honest and needy as those words are used as terms of art in bankruptcy law. In addition, the Court finds that exceptional circumstances exist that warrant a bankruptcy discharge. As a result, the Court denies the UST's motion to dismiss.

### A. The Debtor is Honest

The UST's primary theory is that the debtor is not needy because he can make a meaningful repayment to his creditors. However, the UST's case implicates the debtor's honesty in two ways. First, the UST arguably attempts to paint the debtor as a spendthrift prior to the filing of the bankruptcy. Specifically, the UST points to large credit card balances incurred by the debtor prior to 2007.

The Court rejects this argument. The debtor testified that the credit card spending prior to 2007 was the result of his ex-wife's reckless spending habits. He also testified that he was not a beneficiary of the spending. When the UST asked whether the debtor benefitted from his ex-wife's spending, the debtor replied, in substance, "only if I could wear her clothes and shoes." The Court found the debtor's testimony to be credible. Furthermore, numerous charges at women's clothing stores on the Chase account support debtor's version of events. Additionally, the debtor produced documents from years ago in which he outlined plans as to how credit card balances could be paid off, only to have his ex-wife recommence charging after some limited interlude.

Second, the UST argues that the debtor deliberately circumvented the means test by acquiring a mortgage on the Harbor Drive property on the eve of bankruptcy. The Court rejects this argument. The means test is mechanical, not equitable, in nature. *See* In re Rudler, 576 F.3d 37, 51 (1st Cir. 2009). Furthermore, it is undisputed that the Candlewood property was in foreclosure at the time the bankruptcy was filed, and that the debtor needed someplace to live with his three children. Therefore, the Court does not view debtor's purchase of the Harbor Drive property as a deliberate attempt to avoid the means test.

Accordingly, the Court finds that the debtor is honest as that word is used a term of art in bankruptcy law.

### B. The Debtor is Needy

The UST asserts that the debtor's income is higher that listed on his amended schedules and that his expenses should be reduced. Thus, the UST argues, the debtor has substantial disposable income with which to pay his unsecured creditors in a chapter 13 plan. The Court rejects the UST's arguments.

5

*1. The Debtor's Income*

The UST asserts that, based on the debtor's recent pay advices, the debtor's gross income is $13,425 per month, which results in disposable income of over $1,000 per month. The debtor asserts that his gross income in the future will be lower than his recent income because he must abide by the child custody provisions of the shared parenting agreement to avoid a contempt order in domestic relations court.

The Court found the debtor's testimony regarding his need to reduce his working hours to be credible. Furthermore, it is the debtor's future income and not his past income that matters. The primary issue under the "want of need" prong is whether the debtor could successfully fund a chapter 13 plan or otherwise pay back his creditors. Therefore, "projected disposable income" as that term is used in 11 U.S.C. § 1325(b)(1)(B) and not "disposable income" as that term is used in 11 U.S.C. § 1325(b)(2) is the more applicable concept. When determining a debtor's projected disposable income, the Court starts with the debtor's disposable income and makes adjustments based on "known or virtually certain changes" to the debtor's financial condition. Hamilton v. Lanning, 130 S.Ct. 2464, 2473 (2010).

The debtor's reduction in hours to avoid contempt of court is a "known or virtually certain circumstance." For this reason, the Court accepts the debtor's gross income as disclosed on his amended Schedule I for the purpose of ruling on the UST's motion.

*2. The Debtor's Expenses*

The UST challenges the following expenses claimed by the debtor: first, his house payment for the Harbor Drive property; second, his 401(k) contribution; and, third, his alleged excessive withholding of taxes. The UST argues that if these expenses are eliminated or reduced, the debtor will be able to fund a chapter 13 plan. The Court finds that the debtor's expenses are reasonable.

*a. The House payment on the Harbor Drive property*

According to amended Schedule J, the debtor pays $1,533 per month on his mortgage for the Harbor Drive property. The UST objects to this amount as excessive. According to the UST, the debtor should be forced to abandon the Harbor Drive property and find an inexpensive rental to free up money to pay unsecured creditors.

The Court finds that the debtor's mortgage payment is reasonable. The debtor testified that he needed a residence in Jackson Township to maintain compliance with the shared parenting agreement. He further testified that comparable rental properties ranged in price between $1,200 and $1,800. The Court considers the debtor's estimate to be credible. Thus, abandoning his house and renting a home would not result in a substantial cost savings. In addition, the debtor testified that he tried and failed to get a conventional mortgage. A

6

conventional mortgage, if one was available, on a property more typical of someone with debtor's earnings, would be far more than the payment on debtor's comparatively humble residence.

### b. Debtor's 401(k) Contribution

According to amended Schedule J, the debtor makes a $543 per month contribution to his 401(k). The UST objects to the debtor's 401(k) contribution. According to the UST, the debtor should not be allowed to make 401(k) contributions because "[t]here is an inherent unfairness in permitting a debtor to pay himself . . . while paying creditors only a fraction of their just claims." Behlke, 358 F.3d at 436.

The Court finds that the law regarding the allowability of 401(k) contributions has been modified by statute since Behlke was decided. The Bankruptcy Abuse and Consumer Protection Act of 2005 introduced 11 U.S.C. § 541(b)(7), which provides in pertinent part:

> Property of the estate does not include . . . any amount . . . withheld by an employer from the wages of employees for payment as contributions . . . to . . . an employee benefit plan that is subject to title I of the Employee Income Security Act of 1974 . . . except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2) . . . .

By passing section 541(b)(2), Congress elevated the public policy in favor of retirement savings above the bankruptcy policy that favors maximum repayment to unsecured creditors. As such, the debtor would be entitled to continue making his 401(k) contribution in a hypothetical chapter 13 plan. See In re Johnson, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006); In re Smith, Case No. 09-64409, *4 (Bankr. N.D. Ohio 2010) (finding that 401(k) contributions are not evidence of bad faith absent special circumstances).

The UST argues that in Eisen v. Thompson, 370 B.R. 762, 771 (N.D. Ohio 2007) the court recognized the continuing vitality of Behlke's discussion of 401(k) contributions. However, Eisen deals with a completely different issue. Eisen holds that 401(k) loan payments are not deductible from disposable income as a secured debt *for purposes of the means test*. Id. However, the court also noted that, pursuant to 11 U.S.C. § 1322(f), 401(k) loan payments are not income *for purposes of funding a chapter 13 plan*. Id. at n.14. Section 1322(f) parallels section 541(b)(7). Thus, Eisen actually refutes the UST's argument that the debtor would be forced to stop making 401(k) contributions in a chapter 13 plan.

Even if the Court adopted the UST's position that 401(k) contributions are income for purposes of section 707(b)(1) and (3), the Court would still find in favor of the debtor. Behlke never set an absolute bar to 401(k) contributions. Courts have found 401(k) contributions to be appropriate in cases where the debtor is near retirement and has limited retirement savings. *See,*

7

*e.g.*, In re Mauer, Case No. 09-32604 (Bankr. N.D. Ohio 2009) (allowing a $460 per month 401(k) contribution). Such is the case here. Debtor is 51, has virtually no retirement funds and faces a mandatory retirement age. Moreover, given the frequent, rigorous physicals, it is not safe to assume that debtor will be able to fly until he reaches 65 years of age.

### c. The Debtor's Tax Withholding

The UST insists that the debtor's tax withholding should be 21% as opposed to the 32% reflected on debtor's pay stubs. The debtor has conceded the point. Amended Schedule J lists a tax withholding of 21%. Nonetheless, the debtor does not have significant income with which to fund a chapter 13 plan.

### 3. Other Circumstances Demonstrating Need

In addition to ability to repay, whether a debtor suffered an "unforseen and catastrophic event" that led to his bankruptcy is relevant to whether a debtor is needy. Krohn, 886 F.2d at 126–128. The debtor in this case suffered two such events. First, in 2007, he was forced to leave his employment for six months because of his use of antidepressants. Although the debtor acquired most of his unsecured debt prior to 2007, it is likely that debtor's unemployment at least contributed to the filing of his bankruptcy. A second catastrophic event occurred when debtor's ex-wife permitted the Candlewood property to flood unattended, in spite of having possession. This negated any opportunity to negotiate a short sale or long term repayment with increasingly pliable home lenders.

Whether a debtor has steady employment is also relevant. Id. The debtor's continued employment is dependant on his health. His 2007 layoff demonstrates that it is far from certain that the debtor will make it to mandatory retirement at age 65.

Finally, the Court notes that the debtor has three young children at a relatively advanced age, obtained his job at JetBlue late in his career, has been forced into a lifestyle of "extreme commuting" and cannot count on any help from his ex-wife because she is not able to contribute meaningfully to funding the children's needs even though she has had her debts discharged in bankruptcy, unchallenged by the UST.[1] The Court concludes that each of these circumstances weighs against dismissing the case.

Accordingly, the Court finds that the debtor is needy as that word is used as a term of art in bankruptcy law and denies the UST's motion to dismiss.

An order will accompany this opinion.

\#      \#      \#

---

[1] Apparently, collectability ranks above responsibility in the UST's pantheon of heroes.

Service List:

Kevin Leslie Sibila
8500 Candlewood Ave NW
North Canton, OH 44720

Daniel M McDermott
Office of the United States Trustee
Howard M. Metzenbaum Federal Courthouse
201 Superior Ave. E. Suite 441
Cleveland, OH 44114

Donald M Miller
1400 Market Ave N
Canton, OH 44714-2608

Scott R. Belhorn ust35
Office of the US Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, OH 44114-1240

09-64754-rk    Doc 62    FILED 10/28/10    ENTERED 10/28/10 15:43:13    Page 9 of 9